**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ALEXANDER KON,

      Plaintiff,

      v.                            Case No. 17-CV-2105-JAR-GLR

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

      Defendant.

---

## MEMORANDUM AND ORDER

Plaintiff Alexander Kon filed this matter seeking injunctive and declaratory relief from the Securities and Exchange Commission ("SEC") administrative proceeding against him. Plaintiff filed a Motion for a Temporary Restraining Order, or in the Alternative, a Preliminary Injunction (Doc. 5) seeking to enjoin that proceeding. Before deciding the merits of whether Plaintiff is entitled to injunctive relief, the Court must consider whether it has subject matter jurisdiction to proceed. Both parties addressed the issue of jurisdiction in this Court at length in the briefing for the temporary restraining order/preliminary injunction. Given the briefing before the Court on the issue of subject matter jurisdiction in this case, the Court is prepared to rule. The Court finds that there is not subject matter jurisdiction to proceed with the case. Therefore, the case is dismissed.

**I.**      **Background**

**A.**      **Plaintiff's SEC Proceedings**

Plaintiff is alleged to have violated Section 17(b) of the Securities Act of 1933. The SEC issued an Order Instituting Administrative and Cease-and-Desist Proceedings against Plaintiff on

November 14, 2016.[1]  Administrative Law Judge ("ALJ") Cameron Elliot is presiding over those initial proceedings.

Plaintiff moved ALJ Elliot to withdraw from the proceeding by arguing the applicability of Tenth Circuit precedent in *Bandimere v. SEC*, which held that SEC ALJs were "inferior officers" appointed in violation of the Appointments Clause.[2]  Despite Plaintiff's request that ALJ Elliot withdraw, he declined to withdraw citing a split in authority between the Tenth and D.C. Circuit on the issue and a 2015 SEC Order stating that ALJs were not subject to the Appointments Clause.  Next, Plaintiff moved for interlocutory review to the SEC in the hope that the SEC might review its position on the constitutionality of the appointment of ALJs.  ALJ Elliot denied the interlocutory appeal to the SEC.  Plaintiff also amended his answer to include the Appointments Clause challenge as an affirmative defense.

Plaintiff has a final hearing scheduled for April 3, 2017 for which he is seeking to enjoin.  After this hearing, ALJ Elliot will issue an initial decision.  Once an initial decision is issued, Plaintiff or the SEC Division of Enforcement may appeal to the SEC.  If there is no appeal by Plaintiff or the SEC Division of Enforcement, the SEC will issue an order making the ALJ's decision final.  Under 15 U.S.C. §§ 77i(a), 78y(a)(1), Plaintiff or the SEC may appeal the final decision to the Court of Appeals where the order may be affirmed, modified, or set aside.

**B.      Tenth Circuit Precedent— *Bandimere v. SEC***

During the pendency of Plaintiff's SEC proceeding, the Tenth Circuit issued *Bandimere*[3] on December 27, 2016.  Plaintiff Bandimere filed a petition for review in the Tenth Circuit pursuant to 15 U.S.C. §§ 77i(a) and 78y(a)(1) to obtain review of an adverse decision against

---

[1] *In re Alexander Kon*, No. 3-17674 (SEC Nov. 14, 2016).

[2] 844 F.3d 1168, 1188 (10th Cir. 2016).

[3] *Id.*

him before the SEC.[4]  In the proceedings before the SEC, Bandimere challenged the constitutionality of the appointment of ALJ Elliot, the ALJ also presiding in Plaintiff's case, on the grounds that he was an inferior officer appointed in violation of the Appointments Clause.[5] The SEC rejected this argument during its review of the initial decision entered by ALJ Elliot.[6]

The Tenth Circuit in *Bandimere* relied on the reasoning and analysis employed in *Freytag v. Commissioner of Internal Revenue*,[7] which held that tax court special trial judges were "inferior officers" whose appointment must conform to the Appointments Clause.[8]  Like in *Freytag*, the Tenth Circuit held SEC ALJs are inferior officers under the Appointments Clause because the office of the SEC ALJ is established by law, statutes set forth SEC ALJs' duties, salaries, and means of appointment, and SEC ALJs exercise "significant discretion" in performing the same types of "important functions" as the special trial judges in *Freytag*.[9]  Based on these similarities with *Freytag*, the Tenth Circuit in *Bandimere* held that SEC ALJs were also inferior officers under the Appointments Clause.[10]  As a result, they required appointment in conformity with the Appointments Clause, which the SEC conceded was not the case given the current appointment process.[11]

In *Bandimere*, Judge Monroe G. McKay issued a dissent reasoning there was a difference between the special tax court judges in *Freytag* and the SEC ALJs—namely, the SEC ALJs do

---

[4] *Id.* at 1171.

[5] *Id.*

[6] *Id.*

[7] 501 U.S. 868, 881–82 (1991).

[8] *Bandimere*, 844 F.3d at 1188.

[9] *Id.* at 1177–82.

[10] *Id.* at 1188.

[11] *Id.* at 1176, 1188.

not have binding power.[12]  Judge McKay also expressed concern that the Tenth Circuit's

interpretation of *Freytag* may put all federal ALJs at risk of being inferior officers.[13]  He

compared the responsibilities of SEC ALJs to the thousands of Social Security Administration

ALJs, and concluded he could not "discern a meaningful difference between" them under the

reading of *Freytag* espoused in the majority opinion.[14]  Judge Mary B. Briscoe wrote a

concurrence quelling many of Judge McKay's concerns.[15]

The Tenth Circuit's holding in *Bandimere* created a circuit split with a preceding case

before the United States Court of Appeals for the District of Columbia Circuit, *Raymond J. Lucia*

*Co. v. SEC*.[16]  In *Lucia*, the D.C. Circuit held that SEC ALJs were employees, not inferior

officers, so SEC ALJ appointments need not comport with the Appointments Clause.[17]  *Lucia*

was premised on the reasoning that SEC ALJs lacked the ability to render "final decisions."[18]

The D.C. Circuit concluded this was consistent with *Freytag*'s conclusion that special tax court

judges are inferior officers based on the fact that the special tax court judges could render final

judgments.[19]  Thus, SEC ALJs were constitutional.[20]  However, this judgment has since been

vacated, and the D.C. Circuit granted rehearing en banc on February 16, 2017.

Based on *Bandimere*, Plaintiff filed this action seeking to enjoin the pending SEC action

against him.  The SEC notified the Court on March 16, 2017 that it filed a petition for rehearing

---

[12] *Id.* at 1194 (McKay, J., dissenting).

[13] *Id.* at 1199.

[14] *Id.* at 1199–1200.

[15] *Id* at 1188–94 (Briscoe, J., concurring).

[16] 832 F.3d 277 (D.C. Cir. 2016), *vacated for rehearing en banc*.

[17] *Id.* at 286.

[18] *Id.* at 285–86.

[19] *Id.* at 285 (citing *Freytag v. SEC*, 501 U.S. 868, 881–82 (1991)).

[20] *Id.* at 286.

in *Bandimere* on March 13, 2017.[21]  On March 14, 2017, the Tenth Circuit issued an order directing Plaintiff Bandimere to file a response by March 24, 2017 to the petition for rehearing. The matter is still pending before the Tenth Circuit.

## II.  Discussion

The threshold issue before this Court is whether there is subject matter jurisdiction for this Court to proceed to enjoin ongoing SEC administrative proceedings.  Specifically, Plaintiff requests this Court enjoin the SEC proceeding on the basis that ALJ Elliot is unconstitutionally appointed in violation of the Appointments Clause.  Plaintiff alleges that his constitutional harm is actual, and that the SEC "may not utilize the shield of procedure to protect itself against the sword of binding constitutional precedent" in light of the Tenth Circuit's holding in *Bandimere*.[22] The SEC takes the position that this Court does not have subject matter jurisdiction over constitutional challenges to SEC administrative proceedings because the federal securities laws vest exclusive jurisdiction for review of such issues with the court of appeals.

The Court agrees with the SEC that there is not concurrent jurisdiction in this Court to enjoin SEC proceedings on the basis of this constitutional challenge.  The Court notes that subject matter jurisdiction goes beyond mere "procedure," as this Court is a court of limited jurisdiction with only the power authorized by the Constitution and statute.  This Court may only consider cases for which subject matter jurisdiction exists.  For the reasoning explained in more detail below, this Court concludes it is clear Congress, by establishing a detailed statutory scheme in 15 U.S.C. § 78y providing for an administrative proceeding before the SEC plus judicial review in the court of appeals, intended to preclude concurrent jurisdiction in this Court for constitutional challenges like the one Plaintiff asserts.

---

[21] Doc. 17.

[22] Doc. 14 at 1.

As an initial matter, federal courts possess only the power authorized by the Constitution and by statute.[23]  Therefore, the law imposes a presumption against jurisdiction.[24]  Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider.[25]  Generally speaking, a litigant may seek review of an agency action in a district court under any applicable jurisdictional grant.[26]  However, an exception applies when a special statutory review scheme exists.[27]

In *Thunder Basin Coal Co. v. Reich*,[28] the Supreme Court set forth a framework for determining when a statutory scheme of administrative and judicial review forecloses concurrent district court jurisdiction.  Statutes that provide for agency review do not restrict judicial review unless the statutory scheme displays a "fairly discernible" intent to limit jurisdiction and the claims at issue are of the type Congress intended to be reviewed within the statutory scheme.[29]  To determine whether Congress intended to substitute agency review for judicial review, courts look to the statute's language, structure and purpose, its legislative history, and whether the claims can be afforded meaningful review.[30]  The Court presumes that Congress does not intend to limit federal court jurisdiction (1) if preclusion could foreclose all meaningful judicial review,

---

[23] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

[24] *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

[25] *Bowles v. Russell*, 551 U.S. 205, 212 (2007).

[26] *See, e.g.*, 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof"); *Id.* § 706 (stating courts may set aside any agency action "contrary to constitutional right, power, privilege, or immunity"); 23 U.S.C. § 1331 (stating federal courts generally have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.").

[27] *See Thunder Basin Coal Co. v. Martin*, 969 F.2d 907, 972 (10th Cir. 1992).

[28] 510 U.S. 200 (1994).

[29] *Free Enter. Fund v. Pub. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 207).

[30] *Thunder Basin*, 510 U.S. at 207 (citing *Bd. of Governors, FRS v. Mcorp Financial, Inc.*, 502 U.S. 32 (1991); *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Tr. Co.*, 379 U.S. 411 (1965)).

(2) if the suit is "wholly collateral" to a statute's review provision, and (3) if the claims are outside agency expertise.[31]

## A.    Congressional Intent to Preclude District Court Review under §78y

Applying the framework established in *Thunder Basin*, the Court will first decide whether it is "fairly discernible" from the "text, structure, and purpose" of § 78y that Congress intended this statute to provide the exclusive means for judicial review of an SEC administrative action.  Thus, the Court must explain the statutory scheme for SEC proceedings and review.

The SEC administrative action begins when the SEC serves the respondent with an Order Instituting Proceedings.  The SEC then presides over the action, which is typically delegated to an ALJ.[32]  In SEC proceedings, the Federal Rules of Civil Procedure and Evidence do not apply, and the respondent does not have the right to a jury trial.  Instead, the SEC's Rules of Practice apply.[33]  Administrative actions proceed relatively quickly.[34]

When the proceedings are held before an ALJ, the ALJ holds an evidentiary hearing and then renders an initial decision with factual findings and conclusions of law.[35]  Either the SEC Division of Enforcement or the respondent may appeal the initial decision to the SEC, or the SEC may review the decision on its own initiative.[36]  The SEC may then "affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, an initial decision by a hearing officer and may make any findings or conclusion that in its judgment are proper and on

---

[31] *Free Enter. Fund*, 561 U.S. at 489.

[32] See 15 U.S.C. § 78d-1(a)-(b); 17 C.F.R. § 201.110.

[33] 17 C.F.R. § 201.100 *et seq.*

[34] *See id.* § 201.360(a)(2).

[35] *Id.* § 201.360(a)(1), (b).

[36] *Id.* § 201.410, 201.411(c).

the basis of the record."[37]  By contrast, if there is no appeal to the SEC, and the SEC declines to review on its own initiative, the ALJ's decision becomes the final decision.[38]  The administrative process, thus, ends with a final decision.

The SEC or the petitioner may then obtain judicial review with the filing of a petition in the court of appeals, which triggers the court's jurisdiction.[39]  The aggrieved party may seek review in the court of appeals either for the circuit in which he or she resides or in which he or she has her principal place of business, or for the District of Columbia Circuit.[40]  The petitioning party may then request that the SEC stay enforcement of its order pending review in the circuit.[41]

There are provisions that allow for limited district court jurisdiction over some securities issues.[42]  However, § 78y details how the court of appeals reviews a final order of the SEC. Once a petition is filed in the court of appeals, the court's jurisdiction becomes exclusive.[43] Section 78y grants the courts of appeal broad authority to "affirm or modify and enforce or to set aside" the SEC final order in whole or in part.[44]  The court of appeals must accept the SEC's factual findings that are supported by substantial evidence, but, if appropriate, the court may remand to the SEC for additional fact finding.[45]  Section 78y prevents the court of appeals from considering an objection not raised before the SEC unless there was "reasonable grounds" for

---

[37] *Id.* § 201.411(a).

[38] 15 U.S.C. § 78d-1(c).

[39] *Id.* § 78y(a)(1), (3).

[40] *Id.* § 78y(a)(1).

[41] 17 C.F.R. § 201.401.

[42] *See, e.g.*, 15 U.S.C. § 78u(d), 78u-1, 78u-3 (authorizing the SEC to seek in federal district court injunctive, civil penalties, or a temporary escrow order).

[43] *Id.* § 78y(a)(3).

[44] *Id.*

[45] *Id.* § 78y(a)(4)–(5).

failing to raise the objection before the SEC.[46]  The court of appeals may stay enforcement of SEC final orders pending review "to the extent necessary to prevent irreparable injury."[47]

In analyzing whether it is "fairly discernible" that Congress intended to preclude district court review under § 78y, the Court is particularly persuaded by Defendant's argument that this is nearly identical to the statutory scheme in *Thunder Basin Coal Co. v. Reich*.[48]  In *Thunder Basin*, the Supreme Court considered 30 U.S.C. § 816(a), which is the statutory scheme providing review of decisions of the Federal Mine Safety and Health Review Commission (the "Federal Mine Safety Commission").[49]  The Federal Mine Safety Commission may impose civil penalties for violations of the regulations under the Mine Act.[50]  Plaintiff in *Thunder Basin* filed a lawsuit in district court challenging a regulation under the Mine Act.[51]  Specifically, Plaintiff argued that requiring it to undergo a statutory review process violated its due process rights under the Fifth Amendment.[52]  The statutory scheme under the Mine Act is nearly identical to the process in § 78y—with review first by an ALJ, challenges allowable before the Federal Mine Safety Commission, final orders issued by the Federal Mine Safety Commission, and ultimately appellate power in the court of appeals.[53]  The Supreme Court held that the text and structure of

---

[46] *Id.* § 78y(c)(1).

[47] *Id.* § 78y(c)(2).

[48] 510 U.S. 200 (1994).  The Court notes that *Thunder Basin* is distinguishable in that it precluded a pre-enforcement judicial review in the district court of a constitutional challenge to a Mine Act regulation.  *Id.* at 218.  However, the Court finds that this fact would not change the analysis on whether it is fairly discernible that Congress intended to preclude district court review under the Mine Act.

[49] *Id.* at 207–12.

[50] *Id.* at 204, 208.

[51] *Id.* at 204–05.

[52] *Id.*

[53] *Id.* at 207–08.

the Mine Act demonstrated Congress's intent to preclude the due process challenge to be considered in federal district courts.[54]

This Court finds, consistent with a number of courts of appeal,[55] the text of the Mine Act's judicial review provision at issue in *Thunder Basin* is nearly identical to those governing SEC administrative and judicial review provisions.  The Mine Act and § 78y are nearly identical in that both provide exclusive jurisdiction upon the filing of a petition for review in the court of appeals, and the court of appeals has authority to affirm, modify, enforce, or set aside the final order of the respective agency in whole or in part.[56]  Also, the Mine Act and § 78y grant broad authority for review of final orders of the respective agencies, including limited ability to consider new arguments not before the agency, rejection of findings of fact, remand for additional fact finding, and issuance of a stay.[57]  Given that § 78y and the Mine Act are nearly identical and the Supreme Court has concluded the Mine Act evinces Congressional intent to resolve challenges to agency orders first in the administrative forum and then before the court of appeals,[58] this Court finds that it is "fairly discernible" that Congress intended to preclude district court review of Plaintiff's challenge in enacting § 78y.

To be sure, this Court also notes the similarity between § 78y and the Civil Service Reform Act[59] analyzed by the Supreme Court in *Elgin v. Department of Treasury*.[60]  In *Elgin*, the Supreme Court held that Congress intended to preclude district court jurisdiction over a

---

[54] *Id.* at 208–09.

[55] *See, e.g., Bennett v. SEC*, 844 F.3d 174, 181–82 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236, 1242 (11th Cir. 2016) *Jarkesy v. SEC*, 803 F.3d 9, 16–17 (D.C. Cir. 2015).

[56] 15 U.S.C. § 78y(a)(1)–(3); 30 U.S.C. § 816(a)(1).

[57] 15 U.S.C § 78y(a); 30 U.S.C. § 816(a).

[58] *See Thunder Basin*, 510 U.S. at 208–09.

[59] 5 U.S.C. § 1101.

[60] 132 S. Ct. 2126 (2012).

constitutional challenge to the Civil Service Reform Act, which authorized the termination of federal employees who failed to register for the Selective Service as required by the Military Selective Service Act.[61]   Specifically, the plaintiffs in *Elgin* challenged that the Selective Service registration provision[62] was an unconstitutional bill of attainder and unconstitutionally discriminated on the basis of sex.[63]   The Civil Service Reform Act's "elaborate" framework set forth the method for covered employees to obtain review of adverse employment actions, starting with the Merit Systems Protection Board and then on appeal exclusively to the United States Court of Appeals for the Federal Circuit.[64]   The Supreme Court held that because of the "painstaking detail" with which the review scheme in the Civil Service Reform Act is set out, it was "fairly discernible that Congress intended to deny such employees an additional avenue of review in district court."[65]

Again, the Court finds, as consistent with other courts of appeal,[66] that the Civil Service Reform Act is similar to § 78y.   As the Eleventh Circuit pointed out in *Hill v. SEC* when comparing the Civil Service Reform Act and § 78y, "§ 78 y makes it clear that Congress intended to preclude parallel federal district court litigation involving challenges to final [SEC] orders."[67]   It is clear that Congress, like in the Civil Service Reform Act, intended for these claims to be channeled through the administrative agency and then to the court of appeals.   This Court's finding that it is fairly discernible that Congress intended in § 78y to preclude district court jurisdiction over Plaintiff's claims is consistent with the Supreme Court's finding in *Elgin*.

---

[61] *Id.* at 2133–36, 2140.

[62] 5 U.S.C. § 3328.

[63] *Id.* at 2131.

[64] *Id.* at 2133–34.

[65] *Id.* at 2134.

[66] *See, e.g.*, *Hill v. SEC*, 825 F.3d 1236, 1243 (11th Cir. 2016).

[67] *Id.*

**B.      Reviewability of Plaintiff's Claim Within the Statutory Scheme**

Next, applying the framework established in *Thunder Basin*, the Court will decide whether Plaintiff's claim that ALJ Elliot is unconstitutionally appointed "[is] of the type Congress intended to be reviewed within this statutory structure."[68]  Thus, the Court must determine whether a failure to consider the Appointments Clause claim would foreclose meaningful judicial review, whether the Appointments Clause claim is "wholly collateral" to the review provisions, and whether the Appointments Clause claim is outside of the SEC's agency expertise.  Based on the reasoning explained more fully below, the Court finds that the issue of constitutionality Plaintiff challenges is of the type Congress intended to be reviewed within the statutory scheme.

**1.      Meaningful Judicial Review**

First, the Court considers whether § 78y offers meaningful review of Plaintiff's Appointments Clause claim.  Plaintiff makes two arguments that there is no meaningful review provided within the SEC statutory scheme.  First, Plaintiff argues that while there would be review in the courts of appeal, this would not be meaningful because it would have already endured the unconstitutional proceeding.  Second, Plaintiff argues "the SEC administrative machinery does not provide a reasonable mechanism for raising Plaintiff's constitutional claim because the SEC's Rules of Practice do not permit counterclaims against the SEC."[69]

The Court finds Plaintiff's argument, that there will be no meaningful review if he is required to submit to the "unconstitutional proceeding," fails at the outset.  As the SEC correctly pointed out, every person hoping to enjoin an administrative proceeding could make the argument that there is no meaningful review if they are required to submit the proceeding that

---

[68] *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994).

[69] Doc. 6 at 4 (citation omitted).

they challenge.[70]  This Court recognizes that Plaintiff will have to expend financial resources, expend time to complete the proceeding, and endure reputational harm if a final decision is entered against him.   Ultimately, the proceeding may prove to be constitutionally infirm.  There is no way to restore those resources or repair Plaintiff's reputational harm with review in the court of appeals.  However, subsequent review in the court of appeals, as § 78y contemplates, can vacate the resulting judgment.  In fact, *Bandimere*, the case that Plaintiff relies on heavily throughout his briefing, demonstrates that meaningful review is possible as the Tenth Circuit vacated the SEC final judgment entered against Plaintiff Bandimere.[71]  Similarly, this post-proceeding relief will vindicate the harm that Plaintiff is seeking to avoid.

It is common for litigants to make challenges to a court's constitutional legitimacy on appeal.  As the Second Circuit has explained, "litigants who unsuccessfully challenge the authority of a presiding judge or jury to decide a case often must wait to appeal the issue until after the court renders a final judgment."[72]  To put it aptly, "[t]he litigant's financial and emotional costs in litigating the initial proceedings are simply the price of participating in the American legal system, and not an irreparable injury" that necessitates this Court having concurrent jurisdiction to intervene in the SEC proceeding.[73]  Thus, this Court is unpersuaded that Plaintiff's burden of enduring the SEC proceeding and seeking review in the court of

---

[70] *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (holding that the substantial burden of defending oneself in an unlawful administrative proceeding does not constitute irreparable harm); *Tilton v. SEC*, 824 F.3d 276, 285–86 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 775 (7th Cir. 2015) ("Every person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress.").

[71] *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016).

[72] *Tilton*, 824 F.3d at 285 (citing *Germain v. Conn. Nat'l Bank*, 930 F.2d 1038, 1040 (2d Cir. 1991) (concluding that a defendant who unsuccessfully challenged the plaintiff's right to a jury trial must wait for the jury's verdict before appealing); *D'Ippolito v. Am. Oil Co.*, 401 F.2d 764, 764–65(2d Cir. 1968)).

[73] *Id.*

appeals would simply eliminate meaningful review, as this is a common position for litigants in the American legal system.

Plaintiff argues that *Touche Ross & Co. v. SEC*[74] and *Gupta v. SEC*[75] support his contention that requiring him to endure the administrative process and seek review in the court of appeals would deprive him of meaningful review.  Both cases recognized that to require the petitioners in those cases to exhaust their administrative remedies before the SEC would require them to submit to the very procedure they were attacking.[76]  However, this court finds Plaintiff's use of this case law as unavailing.  In fact, in *Tilton v. SEC*, a more recent Second Circuit case, the court distinguished *Touche Ross* from the case before it, which was nearly identical to the case before this Court.[77]  In *Tilton*, the petitioners sought to enjoin SEC proceedings based on the ALJ being unconstitutionally appointed under the Appointments Clause.[78]  The Second Circuit, when considering petitioner's citation to *Touche Ross* for the proposition that no meaningful review would be provided, clarified that:

> The Court's decision did not suggest that a federal court would be unable to vindicate Touche Ross's challenge to Rule 2(e) after the SEC's proceeding concluded.  It held only that there was no compelling reason for Touche Ross to wait for post-proceeding review because the administrative tribunal would not bring its expertise to bear in a way that would aid a federal court's eventual adjudication.  That proposition does not support the appellants' contention here that post-proceeding judicial review of their Appointments Clause challenge will not be meaningful.  Rather, *Touche Ross* resonates with a different *Thunder Basin* factor: whether a claim falls outside an agency's expertise.  And its reasoning on that issue is no longer considered sound . . . .[79]

---

[74] 609 F.2d 570 (2d Cir. 1979).

[75] 796 F. Supp. 2d 503 (S.D.N.Y. 2011).

[76] *Touche Ross*, 609 F.2d at 577; *Gupta*, 796 F. Supp. 2d at 514.

[77] *Tilton*, 824 F.3d at 284.

[78] *Id.* at 280.

[79] *Id.* at 284–85 ("The appellants' argument that post-proceeding judicial review of their Appointments Clause claim will be meaningless is not merely unsupported by *Free Enterprise* and *Touche Ross*; it is also at odds with established practice in federal court regarding analogous challenges to a tribunal's constitutional authority.").

Thus, this Court finds that *Touche Ross* does not counsel that there will be no meaningful review of Plaintiff's Appointments Clause claim if Plaintiff is required to exhaust his administrative remedies and seek review in the court of appeals pursuant to § 78y.

In response to Plaintiff's second argument that there is no means to raise an Appointments Clause argument in the administrative proceeding, the Court also finds this argument also unpersuasive.  Once again, *Tilton* is instructive.[80]  In *Tilton*, the petitioners raised the Appointments Clause as an affirmative defense in the SEC administrative proceeding.[81]  In this proceeding, Plaintiff also has raised the Appointments Clause as an affirmative defense. Further, Plaintiff's proceeding provides an example of the ability to raise the Appointments Clause claim as he has raised it both in a motion to require ALJ Elliot to withdraw and as a means to seek interlocutory review in the SEC.  This argument clearly lacks merit.

This Court finds, consistent with the courts of appeals that have reached the issue, that the SEC administrative scheme does not foreclose all meaningful judicial review because the statutory scheme provides for federal appellate court review of those claims after the plaintiff has exhausted the administrative process.[82]

## 2.      Wholly Collateral

Next, the Court considers whether Plaintiff's Appointments Clause challenge is "wholly collateral" to the underlying SEC review provisions.  Plaintiff argues that this is wholly collateral to the SEC decision from which review is sought because the claims do not depend on the facts

---

[80] *Id.* at 276.

[81] *Id.* at 280.

[82] *See, e.g.*, *Hill v. SEC*, 825 F.3d 1236, 1243 (11th Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 775 (7th Cir. 2015) ("This Court's jurisdiction is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate.") (quoting *Chau v. SEC*, 72 F. Supp. 3d 417, 425 (S.D.N.Y. 2014)).

of his particular case as he makes a facial challenge, rather than an as applied challenge.  Thus, the constitutional challenge, Plaintiff argues, is wholly unrelated to the underlying alleged securities law violation.

The Supreme Court has not clearly defined the meaning of the "wholly collateral" factor.[83]  Courts have followed the approach espoused in the Supreme Court's decision in *Elgin v. Department of Treasury*, which reasoned that a claim is not wholly collateral where it serves as the vehicle by which a party seeks to prevail in an administrative proceeding.[84]  There are two competing approaches for how this is analyzed.  The first approach suggests that a claim is not wholly collateral to an administrative proceeding if it is intertwined with the merits of the underlying dispute.[85]  The second approach suggests a claim is not wholly collateral if it has been raised in response to, and is procedurally intertwined with, an administrative claim regardless of the substantive connection to the underlying dispute.[86]  The parties do not cite nor is the Court aware of Tenth Circuit precedent adopting either approach to the wholly collateral factor.

While this issue is unsettled, this Court finds that the second approach, where a claim is not wholly collateral if it is procedurally intertwined with the proceeding, is the approach best supported by *Elgin v. Department of Treasury*.  In *Elgin*, the plaintiffs did not dispute the merits of the charges against them, but instead challenged their removal under the Civil Service Reform

---

[83] *See, e.g.*, *Hill*, 825 F.3d at 1250–51; *Tilton*, 824 F.3d at 287; *Chau*, 665 F. App'x at 72.

[84] *Elgin v. Dep't of Treasury*, 132 S. Ct. 2139–40 (2012).

[85] *See generally Bebo*, 799 F.3d at 773 (citing *Hill v. SEC*, 14 F. Supp. 3d 1297 (N.D. Ga. 2015) (finding jurisdiction to hear claims under Article I, Article II, and Seventh Amendment because "[w]hat occurs at the administrative proceeding and the SEC's conduct there is irrelevant to this proceeding which seeks to invalidate the entire statutory scheme."); *Duka v. SEC*, 103 F. Supp. 3d 382, 391–92  (S.D.N.Y. 2015); *Gupta v. SEC*, 796 F. Supp. 2d 503 (S.D.N.Y. 2011)).

[86] *See generally id.* (citing *Tilton v. SEC*, No. 15-2472, 2015 WL 4006165, at *12 (S.D.N.Y. June 30, 2015) (finding no subject matter jurisdiction to hear claim under Article III  because "[plaintiffs] challenge [] flows from the fact that they are subject of the proceeding that they seek to enjoin, and any administrative ruling on their defense will be appealable."); *Bebo v. SEC*, No. 15-c-3, 2015 WL 90349, at *2 (E.D. Wis. Mar. 3, 2015)).

16

Act as the statute was facially unconstitutional.[87]  The plaintiffs argued their bill of attainder and

sex discrimination claims had nothing to do with the types of day-to-day personnel actions

adjudicated before the Merits System Protection Board.[88]  The plaintiffs also argued that their

claims did not seek the Civil Service Reform Act's protections and remedies, or in other words,

the claims were unrelated to the merits of the underlying dispute.[89]  The Court rejected these

arguments because the constitutional claims challenging removal were the type of claims

adjudicated by the Merits System Protection Board within the Civil Service Reform Act.[90]  The

Court observed that the constitutional claims were "the vehicle by which they [sought] to reverse

the removal decisions, to return to federal employment, and to receive the compensation they

would have earned but for the adverse employment action."[91]  Thus, the constitutional challenges

were procedurally intertwined with the proceeding before the Merits System Protection Board.

Therefore, applying this approach, the Court finds that Plaintiff's Appointments Clause

challenge is not wholly collateral to the SEC proceeding.  The Court begins by noting that

Plaintiff's Appointments Clause claim is substantively unrelated to the alleged securities

violation underlying the SEC proceeding.  However, the Appointments Clause challenge does

not qualify as wholly collateral because it is procedurally intertwined with the SEC's ongoing

proceeding.  It has functioned as the grounds for a motion to have ALJ Elliot withdraw from the

proceeding.  It has been used as a means to seek interlocutory appeal to the SEC.  Lastly, it has

been asserted as an affirmative defense to the ongoing SEC proceedings.  This is the vehicle by

---

[87] *Elgin*, 132 S. Ct. at 2139–40.

[88] *Id*. at 2139.

[89] *Id.*

[90] *Id.* at 2139–40.

[91] *Id.*

which Plaintiff is attempting to avoid the SEC proceeding.[92]  Thus, it is procedurally intertwined

with the ongoing SEC proceedings, so it is not wholly collateral.

3.      **Agency Expertise**

Lastly, the Court considers whether "agency expertise" could be brought to bear on the

question presented.  Plaintiff argues that this is "far outside" the SEC's expertise.[93]  Plaintiff

argues that ALJ Elliot has refused to apply the law with regard to his Appointments Clause claim

no less than four times, so it is clear that this is beyond ALJ Elliot's expertise.  The Court finds

this argument unavailing.

The Supreme Court in *Elgin* explained that this is not outside the agency's expertise if the

agency can decide the merits of an underlying substantive claim and "obviate the need to address

the constitutional challenge," then  its expertise could "be brought to bear" on the constitutional

issues.[94]  As applied to SEC proceedings, agency expertise may be brought to bear where the

SEC might decide that the substantive securities claims are meritless, and there would be no need

to reach the constitutional claims.[95]  Thus, courts are "satisfied that the [SEC]'s expertise could

be brought to bear in this way, even if its expertise could offer no added benefit to the resolution

of the constitutional claims themselves."[96]  Here, the SEC could decide that the substantive

securities claims are meritless without necessarily relying on the Appointments Clause claim as

an affirmative defense.  Thus, Plaintiff's claims that the SEC could offer no expertise as to the

constitutional claim is rejected.

---

[92] The Court observes that the SEC could pursue a civil enforcement action in the district court, so this is not necessarily the vehicle by which Plaintiff attempts to prevail on the merits.  *See Hill v. SEC*, 825 F.3d 1236, 1252 (11th Cir. 2016).  However, if he was successful with his constitutional challenge, this would still halt the ongoing SEC proceeding challenged herein, which this Court finds is the action that Plaintiff is seeking to avoid.

[93] Doc. 6 at 3.

[94] *Elgin*, 132 S. Ct. at 2140.

[95] *Hill*, 825 F.3d at 1250.

[96] *Id.* at 1250–51.

Further, even if this Court needed to reach the issue of whether ALJ Elliot addressed Plaintiff's constitutional claims to analyze the agency expertise factor, this Court notes that Plaintiff's argument that ALJ Elliot has failed to address his Appointments Clause claim is without merit.  ALJ Elliot has now ruled on the merits of the constitutionality of Plaintiff's Appointments Clause claim twice.  First, ALJ Elliot considered the merits of this argument with Plaintiff's motion for him to withdraw from the SEC proceeding.  Second, ALJ Elliot considered the merits again when Plaintiff sought interlocutory review before the SEC.  While ALJ Elliot ultimately disagreed with Plaintiff and the Tenth Circuit's position on the constitutionality of his appointment, he ultimately was capable of considering the claim and providing a reasoned response.[97]  This is so especially in light that the constitutionality of his appointment is still in the process of being litigated—the Tenth Circuit and D.C. Circuit both considering rehearing this claim.  This weighs against the existence of subject matter jurisdiction.

C.   **Conclusion**

Under the framework set forth in *Thunder Basin*, this Court finds that the statutory scheme displays a "fairly discernible" intent to preclude district court jurisdiction, and that Plaintiff's Appointments Clause claim at issue is of the type Congress intended to be reviewed within the statutory scheme.  This Court's finding that it lacks jurisdiction is consistent with five circuit courts of appeal also finding that district courts lack jurisdiction to hear constitutional challenges to enjoin SEC proceedings.[98]  More importantly, this is consistent with the Tenth

---

[97] *See Jarkesy v. SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015) ("Because the Commission has proven fully capable of considering Jarkesy's attacks on the fairness of his proceeding—at least in the first instance—nothing about the nature of those claims strongly suggests that Congress would have wanted to carve them out of the administrative scheme.").

[98] *See, e.g.*, *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016) (holding district court lacked jurisdiction over claims for injunctive and declaratory relief from pending or impending SEC administrative proceedings on the basis that the proceeding was unconstitutional because the ALJ was not properly appointed under the Appointments Clause); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015).

Circuit in *Bandimere*, which raised in a footnote the issue of jurisdiction in district courts for collateral review of the constitutionality of SEC ALJs.  In the footnote, the Tenth Circuit explained,

> Other SEC respondents have attacked the validity of SEC ALJs by filing collateral lawsuits attempting to enjoin administrative enforcement actions. Circuit courts have rejected these attempts, holding that federal courts lacked jurisdiction because the respondents have failed to raise and exhaust the arguments in the administrative proceedings.  Here, Mr. Bandimere did not file a collateral lawsuit.  He instead raised his constitutional argument before the SEC, which rejected it.  We therefore have jurisdiction to address the Appointments Clause issue as properly presented in Mr. Bandimere's petition for review.[99]

Plaintiff all but ignores this footnote.  Plaintiff also ignores the posture in which Bandimere brought his constitutional argument before the Tenth Circuit.  In *Bandimere*, the ALJ entered an initial decision finding him liable.[100]  The SEC reviewed the decision and reached a similar result.[101]  Further, it concluded in that decision that while ALJ Elliot was admittedly unconstitutionally appointed, the SEC found that ALJ Elliot was not an "inferior officer" for purposes of the Appointments Clause.[102]  Bandimere appealed the decision to the Tenth Circuit pursuant to 15 U.S.C. §§ 77i(a) and 78y(a)(1).[103]  In his petition for review of the SEC order, he raised the Appointments Clause challenge.[104]  Thus, the Tenth Circuit found it had proper jurisdiction to review the issue pursuant to the statutory scheme in § 78y.[105]

---

[99] *Bandimere v. SEC*, 844 F.3d 1168, 1171 n.2 (10th Cir. 2016) (citations omitted).

[100] *Id.* at 1171.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *See also Lucia v. SEC*, 832 F.3d 277, 282–83 (D.C. Cir. 2016), *vacated for en banc hearing* (finding jurisdiction to hear constitutional challenge based on Appointments Clause where the SEC ALJ rendered initial decision, the SEC reviewed and imposed the same sanction, and Plaintiff filed review in the circuit court).

However, this case is not in the same procedural posture as *Bandimere*.  ALJ Elliot has not entered an initial decision.  Neither the SEC Division of Enforcement nor Plaintiff have petitioned to have the SEC review the initial decision.  Thus, the SEC has not entered a final decision.  Lastly, there has been no petition for review of the final decision of the SEC before the court of appeals where the party "resides or has his principal place of business."[106]  The proceedings have not been administratively exhausted as the statutory scheme contemplates and as the Tenth Circuit recognizes is necessary to consider the constitutional argument.[107]  Instead, this is brought as a collateral lawsuit seeking injunctive relief, which is exactly the posture that the Tenth Circuit implies would lack jurisdiction in dicta in *Bandimere*.

Finally, the Court must address two final arguments made by Plaintiff in spite of the outcome within the framework set forth in *Thunder Basin*.  Plaintiff argues that based on *Free Enterprise Fund v. Public Co. Accounting Oversight Board*,[108] the Supreme Court has made it clear district courts do have jurisdiction over some constitutional challenges to SEC action under § 78y.  In *Free Enterprise*, the plaintiff challenged the constitutionality of the existence of the Public Company Accounting Oversight Board, which was a board composed of five members appointed by the SEC to create tighter regulations on the accounting industry and some—but not all—of the Board's decisions required the SEC's approval.[109]  The plaintiff brought a claim in the district court that the Sarbanes-Oxley Act, which created the Board, was a violation of the separations of powers, and that the Board was appointed in contravention of the Appointments Clause.  The Supreme Court found that the plaintiff was not challenging application of a

---

[106] 15 U.S.C. § 78y(a)(1).

[107] The Court notes that Plaintiff has raised the issue of the constitutionality of ALJ Elliot by moving him to withdraw and applying for interlocutory appeal to the SEC.  However, this did not administratively exhaust his claims.

[108] 561 U.S. 477 (2010).

[109] *Id.* at 484.

particular rule to it, but rather the plaintiff was challenging the Board in general and whether the existence of the Board was unconstitutional, which made the challenge wholly collateral.[110] Further, the Supreme Court found that there was no meaningful judicial review provided by § 78y because it provided judicial review of SEC action, and not every Board action was considered a final SEC order or rule.[111]   Lastly, the Supreme Court found that judicial review would exist if the Board sanctioned the plaintiff and the plaintiff then appealed.[112]   The Supreme Court noted that plaintiffs are not normally required to "bet the farm . . . by taking violative action" before testing the law.[113]   Thus, the Supreme Court held that § 78y did not strip the district court of jurisdiction over the issue of the constitutionality of the Board.[114]

Contrary to Plaintiff's argument, the Court finds that *Free Enterprise* does not counsel that the Court find jurisdiction for this matter.   Rather, the situation presented herein is distinguishable and shows why Plaintiff's claim is not appropriately heard in the district court. Plaintiff is challenging the appointment of the SEC ALJ presiding over his proceeding.   Far from challenging something wholly collateral to his situation, Plaintiff's challenge is related to the pending matter in his SEC administrative proceeding.   Unlike in *Free Enterprise*, which "was not moored to any proceeding that would provide for an administrative adjudication and subsequent judicial review,"[115] the claim here is targeted at Plaintiff's ongoing proceeding and the presiding ALJ.   Further, he has meaningful means of review.   Plaintiff will have the opportunity to seek review in the court of appeals if he is aggrieved by the SEC's final order, or

---

[110] *Id.* at 484.

[111] *Id.* at 489–90.

[112] *Id.* at 490.

[113] *Id.*

[114] *Id.* at 491.

[115] *Tilton*, 824 F.3d at 287–88.

if not aggrieved, then his challenge to ALJ Elliot will become moot as applied to him. Either way, there is meaningful means of review. Also, unlike in *Free Enterprise*, Plaintiff is not being required to "bet the farm" to test the law as there is an SEC proceeding instituted against him. Although *Free Enterprise* considers a constitutional claim outside of the type Congress intended to be reviewed under § 78y, there is no indication that Plaintiff's constitutional claim is of the type Congress did not intend to be reviewed in § 78y's statutory scheme. The key factors in *Free Enterprise* that rendered § 78y inadequate for review are missing in this case. Thus, this Court finds that a lack of jurisdiction in this case is consistent with *Free Enterprise*.

Lastly, Plaintiff argues that because the constitutional harm goes beyond mere speculation and is actual, there should be jurisdiction to enjoin the proceedings. Plaintiff distinguishes this case from the other five circuit court cases holding that the district court lacked jurisdiction to consider constitutional challenges and enjoin ongoing SEC proceedings because Plaintiff has binding Tenth Circuit precedent in *Bandimere* holding ALJ Elliot was unconstitutionally appointed. By contrast, Plaintiff argues the other circuit courts considered constitutional challenges that were merely "speculative" as these cases were without binding constitutional precedent.

The Court disagrees as jurisdiction does not turn on whether an injury is actual or speculative. Jurisdiction is an entirely separate inquiry from the substantive merits of a constitutional claim. Jurisdiction is not existent merely because the underlying claim may have substantive merit.[116] Plaintiff does not cite nor is the Court aware of law granting jurisdiction to the district court where it otherwise lacks jurisdiction because precedent establishes merit to the

---

[116] This Court takes great caution to note that it does not espouse any belief as to the underlying constitutional claim. Thus, this order should not be read to find SEC ALJs as constitutionally or unconstitutionally appointed.

underlying claim.[117]  Rather, if such a claim has merit, Plaintiff should properly bring such a challenge to the Tenth Circuit or D.C. Circuit as the statutory scheme in 15 U.S.C. § 78y contemplates.  Jurisdiction is not premised on the merits of a challenge, so this argument is rejected.

   **IT IS THEREFORE ORDERED BY THE COURT** that the case is **dismissed** for lack of subject matter jurisdiction.

   **IT IS SO ORDERED.**

   Dated: March 28, 2017

                                        S/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE

---

[117] Plaintiff cites *Marie v. Moser* for the proposition that when the Supreme Court or Tenth Circuit have established a rule of law, this Court must follow it. 65 F. Supp. 3d 1175, 1185 (D. Kan. 2014) (citing *Rodriguez de Quijas v. Shearson/ Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).  While this is true, the *Marie* case is distinguishable in that this Court had subject matter jurisdiction to reach the substantive merits of the claims and follow the Supreme Court and Tenth Circuit precedent.  *Id.* at 1188–89 (asserting jurisdiction under 28 U.S.C. § 1331).  As explained at length above, this Court must establish jurisdiction before ever reaching the merits of the underlying claim.  This Court finds it lacks such jurisdiction.